# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

VICTOR T. SPARROW,

      Petitioner,

v.                                 Case No. 3:19-cv-164-HLA-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

---

## **ORDER**

## I.   **Status**

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) and Appendix (Doc. 2). He challenges a state court (St. John's County, Florida) judgment of conviction for felony battery, burglary of an occupied dwelling, and two counts of child abuse. Respondents filed a Response

(Doc. 8) with exhibits (Doc. 8-1).[1] Petitioner filed a Reply (Doc. 9). This case is ripe for review.

## II.   <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the

---

[1] Some pages of the exhibits are unnumbered. Thus, for ease of reference, the Court cites to the document and page numbers as assigned by the Court's electronic case filing system.

state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that

state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his

federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

The United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-366; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747-48; Sykes,[3] supra, at 84-85. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 111 S. Ct. 2546.

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

6

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified).

Thus, procedural defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a federal

court may still consider the claim if a state habeas petitioner can show

either (1) cause for and actual prejudice from the default; or (2) a

fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157

(11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may

receive consideration on the merits of a procedurally defaulted claim if

the petitioner can establish that a fundamental miscarriage of justice,

---

[4] Murray v. Carrier, 477 U.S. 478 (1986).

the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had

> some conceivable effect on the outcome of the
> proceeding." Id. at 693. Counsel's errors must be
> "so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104 (internal citations modified).

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still demonstrate that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dep't of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's

11

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## III.  <u>Analysis</u>

Petitioner raises several claims under "Ground One" of his Petition, which the parties refer to as Grounds One-A through One-F. Respondents argue that Grounds One-B through One-F are unexhausted and procedurally barred. <u>See</u> Doc. 8 at 8-11. In his Reply, Petitioner states: "Petitioner concedes that grounds One-B through One[-]F w[ere] not properly argued the same way in this Court as they were in the State Court. However, this default was caused by a law clerk, but Petitioner respectfully agrees with the Respondents ONLY on those grounds." Doc. 9 at 1 (emphasis omitted). He then goes on to address only Ground One-A. <u>See</u> <u>id.</u> at 1-6.

Upon review of the parties' positions and the record, the Court agrees that Grounds One-B through One-F are unexhausted and procedurally barred. Although Petitioner seemingly attempts to place blame on an inmate law clerk, such reasoning fails to provide cause to excuse the procedural defaults. <u>See</u> <u>Francis v. Sec'y, Dep't of Corr.</u>, No.

8:15-cv-2205-T-36AAS, 2018 WL 3093481, at *4 (M.D. Fla. June 22, 2018) (citing Tower v. Phillips, 7 F.3d 206, 211 (11th Cir. 1993) ("[I]gnorance of available post-conviction remedies cannot excuse a procedural default."); McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (neither a lack of legal education nor pro se status constituted cause for petitioner's procedural default); Harmon v. Barton, 894 F.2d 1268, 1275-76 (11th Cir. 1990) (a petitioner's pro se status was insufficient to establish cause); Whiddon v. Dugger, 894 F.2d 1266, 1267 (11th Cir. 1990) (misadvice from inmate law clerks during collateral proceedings does not establish cause)). He also has not alleged facts justifying application of the fundamental miscarriage of justice exception to the procedural bar of these claims. Therefore, considering Petitioner's concession that these claims are unexhausted as well as the record as a whole, the Court finds that Grounds One-B through One-F are unexhausted and procedurally barred. Thus, these grounds are due to be denied.

In Ground One-A, Petitioner argues that his trial counsel was ineffective for "failing to inform Petitioner that he had a viable defense of unconditional possessory interest to the burglary charge when Petitioner was a resident of the house he was accused of allegedly burglarizing."

13

Doc. 1 at 4 (emphasis and capitalization omitted). Petitioner asserts that had counsel advised him of this defense, he would not have pled nolo contendere but would have proceeded to trial. See id. at 4-11.

Petitioner raised this ineffectiveness claim in his amended Florida Rule of Criminal Procedure 3.850 motion. The postconviction court denied the claim:

> In ground one of the instant motion, Defendant alleges his counsel was ineffective for failing to advise him of an available defense to the charge of Burglary with an Assault or Battery. Specifically, Defendant asserts that he informed counsel that he resided at the home he was accused of burglarizing. Defendant asserts he informed his counsel that he listed the property as his address on his driver's license and paid rent to the owner. Defendant concludes that had counsel properly investigated, he would have known Defendant was a co-tenant and asserts that he should have been charged with Domestic Violence, not Burglary. Defendant contends he would have gone to trial with a defense of a possessory interest and the fact that there was no lawful eviction or termination of the rental agreement. Defendant asserts he would have been acquitted or if convicted, would have received a shorter sentence.
>
> The Court notes that Defendant was previously afforded leave to amend ground one to allege supporting facts regarding his possessory interest in the property. The Court specifically directed Defendant to address whether the

14

property was owned or leased in his name. In his amended motion, Defendant asserts that he lived at the residence, his driver's license listed the residence as his address and that "he had been paying rent to the owner of the house." Defendant does not assert that his name was ever on the lease. Accordingly, there is no allegation that Defendant had a legal interest in the property.[FN] See Washington v. State, 11 So. 3d 980 (Fla. 5th DCA 2009); see also Pierre v. State, 77 So. 3d 699 (Fla. 3d DCA 2011).

> [FN.] Further, the victim advised the deputies that Defendant voluntarily moved out 4 days before the incident.

The Court finds under the facts as alleged, defense counsel was not deficient. Moreover, the Court notes that a factual basis was articulated on the record by the State, which was not objected to by the Defendant or his attorney, establishing the elements of the burglary charges to which he pled no contest. For these reasons, ground one will be summarily denied.

Doc. 8-1 at 158-60 (some internal citations omitted).

Petitioner filed a motion for reconsideration as to the denial of this claim, id. at 215-20, which the postconviction court denied, id. at 223. Petitioner appealed, and the Fifth District Court of Appeal per curiam affirmed the denial without a written opinion on October 16, 2018. Id. at 230. Petitioner filed a motion for rehearing, id. at 232-34, which the Fifth

DCA denied, id. at 244. The mandate issued on December 4, 2018. Id. at 246.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief.

Even assuming the state court's decision is not entitled to deference, this claim is without merit. The information charged Petitioner with burglary with an assault or battery (Count II), which is a first-degree felony. Id. at 4. At the beginning of the plea and sentencing hearing, the state advised the trial court that it was amending Count II, as the parties had agreed to a negotiated plea disposition. See id. at 11. The state announced: "[T]he State will amend the Information orally in court today to burglary of a occupied dwelling, second-degree felony. The sentence as to Count II will be ten years in the Department of

Corrections, concurrent with Count I." <u>Id.</u> The state proffered the following as to the burglary count:

> As to Count II, pursuant to the negotiations on the record, Victor Sparrow, on the 14th day of September, 2015, in St. Johns County, did knowingly enter and remain in property that was in the possession of Sabrina Willis, and that property was occupied at the time he entered, with the intent to commit an offense therein.

<u>Id.</u> at 18. Petitioner's counsel indicated that Petitioner had "[n]o objection [to the proffered factual basis] for purpose of the plea." <u>Id.</u> Petitioner testified under oath that he desired to plead no contest to the charges and that he understood his rights, the charges, and the terms of the negotiated agreement; he further testified that he believed the plea was in his best interest. Petitioner averred that he had not been threatened, coached, or told to testify falsely, and his only question of the judge was whether he could hug his family before leaving the courtroom.

Burglary is a crime "'involving the possessory rights of another.'" <u>Morris v. State</u>, 87 So. 3d 89, 90 (Fla. 4th DCA 2012) (quoting <u>Potter v. State</u>, 109 So. 91, 91 (1926)). "However, the concept of 'ownership' for purposes of proving a burglary is different than commonly-understood concepts of ownership under general property law: Ownership means any

17

possession which is rightful as against the burglar and is satisfied by proof of special or temporary ownership, possession, or control." Pierre, 77 So. 3d at 701 (quotations and citations omitted); see Bagnara v. State, 189 So. 3d 167, 172-73 (Fla. 4th DCA 2016).

Had the case proceeded to trial, the state likely would have presented the following evidence.[5] In the Warrant Affidavit, it is noted that the victim (Sabrina Willis) told police that Petitioner had moved out of the subject residence several days before the incident. Doc. 8-1 at 171. Ms. Willis further told police that on the date in question, Petitioner arrived at her home to talk, but after a short conversation, Ms. Willis entered her residence and locked the door. Id. A short time later, Petitioner returned to the residence and when Ms. Willis would not let him inside, he kicked the door in. Id. Ms. Willis' daughter told police that she witnessed Petitioner kick the door open, which caused it to break. Id.

In the Offense Report completed by the St. Johns County Sheriff's Office, there are multiple notations by different officers recognizing that

---

[5] The postconviction court attached the Warrant Affidavit to its order denying Petitioner's amended Rule 3.850 motion. Doc. 8-1 at 171-72. The state attached the Offense Report to its response to Petitioner's amended Rule 3.850 motion. Id. at 140-48.

Petitioner did not live at the residence on the date of the burglary. Specifically, Officer Goldman noted that "Victor Sparrow (suspect) previously resided at this address, but voluntarily moved out with all of his possessions in my presence during a prior call on September 10, 2015." Doc. 8-1 at 141. Officer Dees noted that on September 10, 2015, which was four days prior to the burglary, Deputy Ong had responded to the subject residence, and "Victor voluntary moved out of the residence" and "removed all his belongings from the residence." Id. at 144. Additionally, when responding to the subject burglary call, deputies observed a footprint on the exterior of the door, the door frame was damaged, and the deadbolt was in the locked position. Id. at 144, 171. When police interviewed Petitioner, his shoes matched the footprint that was left on the door. Id. at 147.

Even if Petitioner had a legal interest in the property, the state could have presented evidence showing that Petitioner either did not have a possessory interest in the property on the day in question or that Ms. Willis had a superior possessory interest. See Pierre, 77 So. 3d at 701 ("Because the victim (and not [the defendant]) was actually living in the efficiency on the night in question, the mere fact that [the defendant] held

some legal interest in the efficiency (as a lessee) is not itself determinative of his possessory interest, because the crime of burglary involves a disturbance to habitable security and not to the fee." (quotations and citation omitted)); see also Washington v. State, 11 So. 3d 980, 981-82 (Fla. 5th DCA 2009). Moreover, as noted by the postconviction court, "absent an agreement with the State, [Petitioner] faced a sentence of up to life imprisonment on the Burglary with an Assault or Battery (firearm) charge." Doc. 8-1 at 162; see also Doc. 8 at 18. However, because Petitioner entered a negotiated plea of no contest, the state agreed to amend the count and request that the trial court impose a ten-year term of incarceration. Considering the record, the Court finds that Petitioner has failed to show a reasonable probability that had counsel advised him of this defense, he would not have entered the negotiated plea and would have insisted on going to trial. Therefore, Ground One-A is due to be denied.

Accordingly, it is

**ORDERED**:

1.   The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals the denial of his Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida, this **16** day of February, 2022.

UNITED STATES DISTRICT JUDGE

JAX-3 2/7
c:
Victor T. Sparrow, #V05618
Counsel of Record

---

[6] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

21